UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:13-CV-00058-R

**KRISTY SHIRLEY**                                                                                   **PLAINTIFF**

**v.**

**CAROLYN COLVIN**                                                                                **DEFENDANT**
    **Commissioner of Social Security**

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Kristy Shirley filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability benefits. Plaintiff asserts that the ALJ made several errors in his opinion.

After reviewing the parties' fact and law summaries (Docket Nos. 15 and 16) and the administrative record, the Magistrate Judge concludes that, due to lack of clarity in the ALJ's decision regarding the duties encompassed by Plaintiff's past relevant work, inconsistencies in the ALJ's residual functional capacity (RFC) finding, and lack of assessment of Plaintiff's testimony regarding her limitations, the Court is unable to conduct a meaningful review of Plaintiff's contentions or assess their significance, if meritorious.

The Magistrate Judge RECOMMENDS that the District Court remand this matter to the Commissioner for a new decision clarifying these matters and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

### Plaintiff's Disability Claim

Plaintiff suffered extensive physical injury in a head-on motor vehicle collision in 1996, when she was 16 years old. AR, p. 65. John Dimar, M.D., performed: 1) T12-L1 and L2-L3 diskectomy, 2) L1 vertebrectomy, 3) T12-L2 anterior interbody fusion, and 4) left anterior superior iliac autogenous strut

1

graft tricortical. AR, p. 520. Plaintiff's impairments include: status-post fusions and hardware installation of the lumbosacral spine for burst fracture and migraine headaches. AR, p. 18.

According to the testifying medical advisor, retired neurosurgeon Kenneth Cloninger, M.D., the burst fracture "looks like somebody threw and hand grenade in there, I mean, that thing just splits right open" (AR, p. 41). Dr. Cloninger opined that, despite the fact that she did relatively well initially after the accident and surgery, "down the road this thing is going to progress ... She's going to get arthritic changes above and below where they fused her at those four levels ... She might end up having another spinal operation." AR, pp. 39 and 41.

Plaintiff last worked at Gillie Hyde Ford Lincoln Mercury in Glasgow, Kentucky from July, 2002, through October, 2009. She claims that she became disabled in October, 2009, after her twenty-ninth birthday, when her back pain increased significantly. AR, pp. 18 and 396.

She alleges that she can neither sit nor stand for long periods of time because it puts pressure in her low back and tailbone and she must change position several times an hour (AR, p. 396):

> *Plaintiff:* When I turned 29 ..., my back pain increased a lot. I woke up and literally couldn't get out of bed. After that, I was having more trouble. I was working at a job [at the car dealership] where I sat most of the day. They gave me a special chair with a lumbar [support], but I was hurting all day. I kept my feet propped under a desk, but I was more and more distracted from the pain. I tried to get up and do filing or get paperwork from other desks, but it got to the point where the back pain was every day.
>
> My back problems still bother me every day. I have pain in my lower back, into my hips and into my right leg. The pain goes down the outside of my right leg and stops about the knee. If I am sitting, I have constant pressure in my low back and tailbone. I have to change my positions several times in an hour.

Plaintiff testified that she cannot stand for more than 5 minutes without having to sit down because "[i]t puts too much pressure on my, I call it my tailbone. It's down at the bottom base of my back." AR, p. 88.

In addition, Plaintiff alleges that, at about the same time when her back pain increased in October, 2009, a longstanding bladder problem worsened to the point of requiring bathroom breaks once or twice an hour (AR, p. 396):

> I have had bladder problems since about 2000, but it got worse in the last two years [i.e., in approximately October, 2009]. The problem is I have leakage. I also have to go to the bathroom a lot. At my last job [at the car dealership], I got into trouble because I was going to the bathroom. It still is a problem. I typically go to the bathroom once or twice an hour when I'm at home. I will have accidents if I do not go to the bathroom that often. If I pick up anything more than a gallon of milk, I have to go to the bathroom. I also have been having problems with recurrent urinary tract infections.

With respect to her work at the car dealership, Plaintiff testified that "there's a whole lot more to it than what people think." AR, p. 61. In addition to her title clerk and accounts payable duties, which were sedentary, she had cleaning responsibilities as there was no cleaning crew, and she had to coordinate customers with a busy service department. Juggling all these responsibilities was "intense ... like on a timetable." AR, p. 62. She testified that she was forced to quit because of her inability to sit and stand for long periods of time due to her low back / tailbone problem and having to be away from the work station due to frequent trips to the bathroom. "[W]ith my job of course they wanted you to sit there all day." AR, p. 61.

### ALJ's Denial Rationale

The ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she cannot stand or walk more than 2 hours out of an 8-hour workday and needs a sit/stand option allowing her to get up and move about the work station from 35 minutes to hourly. AR, p. 19.

The ALJ denied Plaintiff's disability claim at the fourth step of the sequential evaluation process, finding that she retains the capacity to return to her past relevant work as a title clerk and accounts payable clerk -- both as she actually performed these jobs and as they are generally performed in the

national economy. AR, p. 22. According to the ALJ, "[t]he vocational expert [VE] testified that these jobs were sedentary and could be performed by someone having the same [RFC] as the claimant." AR, p. 22.

## Substantial-Evidence Review

An ALJ's findings are supported by substantial evidence if he identifies supporting evidence in the record and builds a logical bridge from that evidence to his ultimate finding of lack of disability. *Hopgood ex rel. L.G. v. Commissioner*, 578 F.3d 696, 698 (7th Cir.2009). If the logical bridge is insufficiently articulated to allow meaningful judicial review, a remand is required. *Id.* It is incumbent upon the ALJ to explain his findings and credibility determinations so as to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements and the reasons for that weight. *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir.2007).

A reviewing court cannot uphold an AJL's decision even if there is enough evidence in the administrative record to support the decision, where the reasons given by the ALJ do not build an accurate and logical bridge between the evidence as a whole and the ultimate finding of lack of disability. *Adkins v. Commissioner*, 2013 WL 6230673, *4 (N.D.Ohio). If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked. *Id.*

For the reasons below and as contemplated by the foregoing standards defining substantial-evidence review, the ALJ's denial rationale does not allow for meaningful judicial review. A remand for a new decision is required.

## The Job-As-A-Whole Requirement

First, the evidence in the administrative record does not support the ALJ's finding (assumption) that Plaintiff had past relevant work consisting of title clerk and accounts payable clerk as separate jobs as opposed to separable duties of a single job.

Every occupation consists of a myriad of tasks, each involving different degrees of physical and mental capacity. To classify work according to the least demanding function of occupations is contrary

to the "letter and spirit of the Social Security Act." *Valencia v. Secretary*, 751 F.2d 1082, 1086 (9th Cir.1985). An ALJ may not consider only the least taxing elements of a claimant's former employment when characterizing that previous work. *Williams v. Secretary*, 1986 WL 16173, *3 (6th Cir.) citing *Valencia*. In order to conclude that a claimant can perform a certain job, the ALJ must find that she is capable of performing all of the duties of that job, even where the job combined the duties of occupations that also exist separately in the national economy. *Berthiaume v. Commissioner*, 1999 WL 814267 (D.N.H.).

The ALJ's decision does not reflect a consideration of Plaintiff's job duties as a whole and does not adequately assess her credibility with respect to an alleged inability to remain at the work station sufficiently to keep up with the pace due to low-back, tailbone, and bladder conditions.

At the hearing, the ALJ expressed some mild skepticism that Plaintiff's car dealership job (or, at least, the separable duties of title clerk and accounts payable clerk) was as intense as Plaintiff described, permitting few opportunities to be away from the work station. The ALJ stated that "I've never known a car dealership to be that intense" and, when Plaintiff insisted that it was, the ALJ terminated the exchange stating simply "well whatever" (AR, p. 62).

In addition, Plaintiff testified that she received special accommodation (AR, p. 87):

*Plaintiff:* [My boss] bought me a special chair that had lumbar support and then I would keep a box in front of my desk to prop my feet up. And then the ladies in the office like the would help -- like we were supposed to clean, of course they did the vacuuming instead of me and another woman cleaned the bathroom instead of my time, that kind of stuff.

The Court is unable to meaningfully review the Commissioner's final decision as it is unclear what are the requirements of Plaintiff's job as a whole at the car dealership -- both as actually performed and as generally performed in the national economy (i.e., without special accommodation). Consequently, the Court is unable to evaluate Plaintiff's ability to perform that job in light of Plaintiff's allegations of: inability to stand for more than 5 minutes without having to sit down (AR, p. 88), needing

5

to change position several times in an hour, and requiring bathroom breaks once or twice an hour (AR, p. 396). Although judicial review of the Commissioner's credibility assessment is deferential, it must be based on findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p at *4.

### **The ALJ's RFC Finding Is Unclear**

Although the ALJ explicitly found that Plaintiff can perform light work (AR, p. 19), it appears that the ALJ intended to find that she is restricted to sedentary work as the ultimate finding of lack of disability is predicated upon an ability to perform past jobs, which "[t]he [VE] testified [are] sedentary." AR, p. 22.

The full range of light work requires standing and/or walking for approximately six hours of an eight-hour workday. Social Security Ruling (SSR) 83-10p, 1983 WL 31251, at *6. The Court is unable to evaluate whether Plaintiff can perform light work as there is no evaluation of Plaintiff's testimony that she cannot stand for more than 5 minutes (AR, p. 88).

In addition, it appears that the ALJ intended to find that Plaintiff must change position hourly, not from 35 minutes to hourly. AR, p. 19. The VE testified that Plaintiff's past relevant work probably would be eliminated unless the Plaintiff can sit for a full hour without needing to stand up and move around (AR, p. 46):

> *ALJ:* [L]et's say a person would require ... a sit stand option allowing the person to get up and move around the work station every 35 minutes to an hour.... Given those limitations, would our hypothetical individual still be able to do either of Ms. Shirley's past jobs as title clerk or accounts payable?
>
> *VE:* It would be something that would be kind of questionable on the 35 minutes. If she just had to change positions every hour, she could probably still do those, yes.

6

**Plaintiff's Contentions**

Plaintiff argues that: 1) The ALJ mischaracterized Dr. Cloninger's testimony regarding her need for a sit/stand option, 2) The ALJ failed to articulate a substantial basis for rejecting the RFC opinion of Plaintiff's treating nurse practitioner, Jamie Blakeman, ARNP, 3) The ALJ's credibility assessment was flawed.

The Court is unable to conduct a meaningful review of Plaintiff's contentions as the ALJ's findings regarding Plaintiff's need for a sit/stand option and her RFC are unclear. The ALJ's credibility assessment fails to address all of Plaintiff's allegations as they bear upon her ability to perform her past relevant work.

**RECOMMENDATION**

Due to lack of clarity in the ALJ's decision regarding the duties encompassed by Plaintiff's past relevant work, inconsistencies in the ALJ's residual functional capacity (RFC) finding, and lack of assessment of Plaintiff's testimony regarding her limitations, the Court is unable to conduct a meaningful review of Plaintiff's contentions or assess their significance, if meritorious.

The Magistrate Judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision clarifying these matters and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), aff'd, U.S. 140 (1984).